**IN THE UNITED STATES DISTRICT COURT IN AND FOR THE WESTERN DISTRICT OF WASHINGTON**

**SEATTLE DIVISION**

| | |
|---|---|
| ERIK GUSTAFSON, an individual, JAMES ANDERSON, an individual, MARIO MAGNOTTI, an individual, DAVID GRONDAHL, an individual, COREY HALL, an individual, and JESSE DISCH, an individual, <br><br>Plaintiffs, <br><br>v. <br><br>CITY OF KIRKLAND, FIRE CHIEF JOE SANFORD, DEPUTY FIRE CHIEF TIMOTHY DAY, MAYOR PENNY SWEET, and CITY MANAGER JAMES LOPEZ, <br><br>Defendants. | No. 25-CV-367 <br><br>**PLAINTIFFS' COMPLAINT FOR DAMAGES, DECLARATORY RELIEF & INJUNCTIVE RELIEF** <br><br>**[JURY TRIAL DEMANDED]** |

COME NOW, ERIK GUSTAFSON ("Gustafson"), JAMES ANDERSON ("Anderson"), MARIO MAGNOTTI ("Magnotti"), COREY HALL ("Hall"), DAVID GRONDAHL ("Grondahl") and JESSE DISCH ("Disch") (collectively, the "Plaintiffs"), by and through their undersigned attorney of record, and submit the following Complaint for Damages, Declaratory Relief and Injunctive Relief, and in support thereof, further state as follows:

I.     INTRODUCTION.

1. This is a complaint alleging a violation of the Plaintiffs' constitutional liberties under the First Amendment, to the free exercise of religion, a violation of Plaintiffs' right to be free from religious discrimination in the context of their employment by the City of Kirkland, and other violations of applicable state and federal law, as set forth in greater detail *infra*.

2. On August 20, 2021, the Governor for the State of Washington issued Proclamation 21.14.1, which prohibited any Worker from engaging in work for a State Agency after October 18, 2021, if the Worker had not been fully vaccinated againt COVID-19 the "Vaccine mandate. *See* https://governor.wa.gov/sites/default/files/proclamations/21-14.1%20-%20COVID-19%20Vax%20Washington%20Amendment.pdf.

3. The Plaintiffs here are devout, practicing Christians, who were terminated from their employment by the City of Kirkland Fire Department, after exercising their rights to religious freedom and declining to receive the COVID-19 vaccine, as such would represent an act prohibited by their sincerely held religious beliefs. Plaintiffs believe that to receive the vaccine(s), especially those using aborted fetal cell lines, would interfere with divine provenance.

4. Plaintiffs were treated in virtually identical fashion by the City of Kirkland Fire Department, in accordance with its apparent determination that it would eventually terminate all employees who objected to receiving the COVID-19 vaccine on religious grounds. Like other City firefighters, the City purported to accommodate them by providing a brief window during which they could be on a "day shift," performing administrative functions, after which the Plaintiffs were summarily terminated.

5. The City did not, at the end of the accommodation period, consider any further accommodations of Plaintiffs or other City firefighters that would permit them to remain in their positions, or even consider extending the "day shift" accommodation based upon the facts and circumstances existing at that time, at the end of December, 2021. The City had already determined that it would simply terminate the employees at the end of the accommodation period, if they did not choose to receive the vaccine.

COMPLAINT FOR DAMAGES,
DECLARATORY RELIEF & INJUNCTIVE RELIEF
No. 25-CV-367

2

6. The City then proceeded to terminate the employment of each of the Plaintiffs here, after going through the requisite "pre-separation" process needed to document their determination.

## II. PARTIES.

7. The Defendant, City of Kirkland, is an entity of local government in the State of Washington, located in King County.

8. The Defendant, Joe Sanford, was Chief of the City of Kirkland Fire Department, at all relevant times, and his involvement in implementing the COVID-19 vaccine mandate, acting under color of law, proximately caused the Plaintiffs' injuries as alleged herein. *See generally* Decl. of Timothy Day, 12/30/2021, a true and correct copy of which is attached as **Exhibit 1**.

9. The Defendant, Timothy Day, was Deputy Chief of the City of Kirkland Fire Department, at all relevant times, and his involvement in implementing the COVID-19 vaccine mandate, acting under color of law, proximately caused the Plaintiffs' injuries as alleged herein. *See id.*

10. The Defendant, James Lopez, was the Deputy City Manager for External Affairs of the City of Kirkland, at all relevant times, and his involvement in implementing the COVID-19 vaccine mandate, acting under color of law proximately caused the Plaintiffs' injuries as alleged herein. *See generally* Decl. of James Lopez, 1/3/2022, a true and correct copy of which is attached as **Exhibit 2**.

11. The Defendant, Penny Sweet, was the Mayor of the City of Kirkland, at all relevant times, and her involvement in implementing the COVID-19 vaccine mandate, acting under color of law, proximately caused the Plaintiffs' injuries as alleged herein. *See generally* correspondence from Mayor Penny Sweet, a true and correct copy of which is attached as **Exhibit 3**.

12. Plaintiff, Mr. Gustafson, was employed as a Firefighter/EMT with the City of Kirkland, prior to his termination on December 31, 2021, for inability to receive the COVID-19 vaccine. Mr. Gustafson was only reinstated to his position on July 3, 2023, after the vaccine mandate was lifted statewide.

13. Plaintiff, Mr. Magnotti, was employed as a Firefighter/EMT with the City of Kirkland, prior to his termination on December 31, 2021, for inability to receive the COVID-19 vaccine. Mr. Magnotti has not been reinstated to his previous position with the City of Kirkland, but was offered reinstatement by the City at or aound the same time as the other named Plaintiffs.

14. Plaintiff, Mr. Anderson, was employed as a Firefighter/EMT with the City of Kirkland, prior to his resignation on March 25, 2022, for inability to receive the COVID-19 vaccine. Mr. Anderson was reinstated to his previous position with the City of Kirkland on June 20, 2023, but at this time is a resident of the State of Tennessee.

15. Plaintiff, Mr. Hall, was employed as a Firefighter/EMT with the City of Kirkland, prior to his termination on January 21, 2022, for inability to receive the COVID-19 vaccine. Mr. Hall was only reinstated to his position on or about June 12, 2023, after the vaccine mandate was lifted statewide.

16. Plaintiff, Mr. Disch, was employed as a Firefighter/EMT with the City of Kirkland, prior to his termination on April 5, 2022, for inability to receive the COVID-19 vaccine. Mr. Disch was only reinstated to his position on or about August 16, 2023, after the vaccine mandate was lifted statewide.

17. Plaintiff, Mr. Grondahl, was employed as a Firefighter/EMT with the City of Kirkland, prior to his termination on April 18, 2022, for inability to receive the COVID-19 vaccine. Mr. Grondahl was only reinstated to his position in or around February, 2023, after the vaccine mandate was lifted statewide.

### III. JURISDICTION & VENUE.

18. The Court has subject matter jurisdiction based on 28 U.S.C. §§ 1331 and 1343(a)(3), because this case raises violations of Plaintiff's federal constitutional rights, as well as intertwined violations of the Washington Constitution, and is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. §§ 2201 and 2202. The Court has subject matter jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

19. Venue in this Court is appropriate pursuant to 28 U.S.C. § 1391(b), and intra-district assignment to the Seattle Division of the United States District Court for the Western District of Washington is proper under LCR 3(e)(1), because all relevant events occurred in King County, Washington.

20. Plaintiffs' claims for declaratory and injunctive relief are authorized by RCW 7.24, 28 U.S.C. § 2201, and 28 U.S.C. § 2202, as well as Rules 57 and 65 of the Federal Rules of Civil Procedure.

IV.  FACTUAL ALLEGATIONS.

21. The United States Consitution was adopted on June 21, 1788, and subsequently amended. The Constitution upholds and buttresses all other laws which have followed, and represents the supreme law of the land. The Constitution protects citizens' free exercise of religion, as well as their rights to due process and equal protection of the laws.

22. Christians hold the Holy Bible to be the basis of their faith in God, through Jesus Christ and the Holy Spirit.

23. The Holy Bible instructs faith-based persons on how to live and how to exercise their religion, and the U.S. Constitution explicitly protects their right to do so, in the First Amendment.

24. Beginning in early 2020, the COVID-19 virus became a grave concern for the world, including the State of Washington and King County.

25. Governor Inslee, the Governor of Washington, issued his first proclamation on January 1, 2021, Proclamation 20-05, *et seq.*, relating to COVID-19 under RCW 38.08, RCW 38.52, and RCW 43.06, effectively deploying the state militia, declaring a state of emergency, and limiting activities to those he believed to be necessary to preserve and maintain life, health, property, and/or the public peace. *See* https://governor.wa.gov/sites/default/files/proclamations/proc_20-25.12.pdf.

COMPLAINT FOR DAMAGES,
DECLARATORY RELIEF & INJUNCTIVE RELIEF
No. 25-CV-367

5

26. On May 29, 2020, Governor Inslee announced a county-by-county plan by which counties could move through phased reopening based on metric analysis of the number of cases reported in relation to health care system readiness.

27. Proclamation 20-25.4, issued by Governor Inslee, outlined the phased reopening plan, stating that employers are required to: "…provide at no cost cloth facial coverings…following public health recommendations for testing and disease control measures…educate workers…maintain minimum six-foot distance when possible…staggering work shift, and staggering breaks…establishing a housekeeping schedule including frequent cleaning and sanitizing…screen employees for signs and symptoms…and cordon off areas where a person known to have had COVID-19 worked."

28. In accordance with the Vaccine Mandate for the State of Washington issued on August 20, 2021, all of the Plaintiffs submitted a timely request for exemption from the vaccination, based on each Plaintiff's sincerely held religious beliefs.

29. Each of the Plaintiffs holds religious convictions that prevent them from taking the COVID-19 vaccination. Their beliefs are sincere, and must be presumed as such by this Court.

30. Due to their sincerely held religious beliefs, each Plaintiff submitted a request for a religious accommodation pursuant to Washington's Law Against Discrimination, RCW ch. 49.60 (the "WLAD"), to the Defendants, as their employers.

31. Plaintiffs' requests for religious exemptions were approved by their employers, the Defendants, based on Plaintiffs' sincerely held religious beliefs.

32. Plaintiffs were initially granted an exemption and offered an accommodation through December 31, 2021, in the form of being placed on the "day shift," *i.e.*, being given administrative duties that did not require them to have any contact with the public.

33. This "accommodation" was itself an adverse employment action, taken only against those firefighters who exercised their statutory and constitutional rights and requested an exemption from the vaccination requirement on religious grounds. For instance, the unvaccinated firefighters were required to wear masks and housed in a City storage building, riddled with mold,

and with no hot water, telephone lines, or back up generator for when the power went out. Other employees who did not request religious exemptions were not subject to this "accommodation."

34. Plaintiff, Mr. Hall, opted to utilize leave under the Family & Medical Leave Act (the "FMLA"), and remained on protected leave until January 15, 2022. When Mr. Hall's leave expired, he was terminated by the Defendants on January 21, 2022. No accommodations were offered to Mr. Hall for him to be able to continue in his position after that date, short of his determining to receive the vaccine and being given an extended time frame to do so.

35. Plaintiff, Mr. Anderson, also opted to utilize leave under the FMLA, and remained on protected leave until March 11, 2022. Mr. Anderson subsequently resigned his position, having been advised that he would shortly face termination for his inability to receive the COVID-19 vaccine. No accommodations were offered to Mr. Anderson for him to be able to continue in his position, short of his determining to receive the vaccine and being given an extended time frame to do so.

36. Plaintiff, Mr. Disch, also opted to utilize leave under the FMLA, and remained on protected leave until March 24, 2022. When Mr. Disch's leave expired, he was terminated by Defendants on April 5, 2022. No accommodations were offered to Mr. Disch for him to be able to continue in his position after that date, short of his determining to receive the vaccine and being given an extended time frame to do so.

37. Plaintiff, Mr. Grondahl, also opted to utilize leave under the FMLA, and remained on protected leave until April 11, 2022. When Mr. Grondahl's leave expired, he was terminated by the Defendants on April 18, 2022. No accommodations were offered to Mr. Disch for him to be able to continue in his position after that date, short of his determining to receive the vaccine and being given an extended time frame to do so.

38. Plaintiff, Mr. Gustafson, accepted the "accommodation" offered by Defendants, and continued to work on the "day shift" until December 31, 2021, at which time he was terminated by the Defendants for his inability to receive the COVID-19 vaccine. No accommodations were offered to Mr. Gustafson for him to be able to continue in his position after

1  December 31, 2021, short of his determining to receive the vaccine and being given an extended time frame to do so.

39. Plaintiff, Mr. Magnotti, also accepted the "accommodation" offered by Defendants, and continued to work on the "day shift" until December 31, 2021, at which time he was terminated by the Defendants for his inability to receive the COVID-19 vaccine. No accommodations were offered to Mr. Magnotti for him to be able to continue in his position after December 31, 2021, short of his determining to receive the vaccine and being given an extended time frame to do so.

40. The named Defendants simply rubber-stamped denials of any further accommodations based on the faulty premise that the Plaintiffs could not safely provide services. Indeed, nearly a month before their accommodations expired, the City notified Plaintiffs (in virtually identical emails) that "[a]fter December 31, the City will no longer be able to offer a day-shift assignment as a reasonable accommodation. The City has further evaluated the other alternative accommodations that were offered, including use of leave and leave without pay, and determined that we can no longer absorb the burdens of those accommodations." *See, e.g.,* electronic correspondence dated December 3, 2021, to Corey Hall from Amy Bolen, on behalf of Deputy City Manager Jim Lopez, a true and correct copy of which is attached hereto as **Exhibit 4**.

41. When these emails were sent out, on December 3, 2021, it is clear that the City had already determined to terminate all individuals who still declined to receive the COVID-19 vaccine, as each of the emails stated that "[w]ithout an accommodation or vaccination, you cannot perform an essential function of your position. Therefore, the City anticipates that you will have to be separated from employment with the City…If we have not received a voluntary separation letter from you by **Monday, December 20**, …the City will proceed with the pre-separation process." *Id.*

42. Prior to the time when the COVID-19 vaccine first became available, the Kirkland Fire Department utilized the standard array of PPE required for "infectious disease" protocols, including, but not limited to N95 masks, gloves, gowns, and eye goggles, in order to prevent the spread of the virus. Other accepted measures such as social distancing and testing were also used.

8
COMPLAINT FOR DAMAGES,
DECLARATORY RELIEF & INJUNCTIVE RELIEF
No. 25-CV-367

43. No information was provided to Plaintiffs explaining why the reasonable accommodations of masking, social distancing, and regular testing could not be used as an accommodation, when such accommodations had previously been considered sufficient to address the threat of employees' exposure to COVID-19. Instead, the City seems to have determined that it would not offer any accommodations after the December 31 cutoff that would permit Plaintiffs or others to remain in their positions, short of an employees' determining to receive the vaccination. Indeed, the City has made no effort to specify the "undue hardship" it relies upon, and there is no "undue hardship," under recognized law.

44. Nonetheless, the City proceeded to terminate the Plaintiffs named herein, by way of Notices of Termination sent from Truc Dever, Human Resources Director. *See, e.g.*, Termination Notice sent to Mr. Gustafson, dated 12/29/2021, a true and correct copy of which is attached hereto as **Exhibit 5**. Some notices were sent in December, 2021, with others being sent closer to when Mr. Disch and Mr. Hall were terminated, some months later in 2022.

45. Around the time of Mr. Gustafson's and Mr. Magnotti's termination, a Memorandum of Understanding ("MOU") was reached between the City of Kirkland and the International Association of Firefighers, Local No. 2545 ("Local 2545"), of which all Plaintiffs were members. *See* Memorandum of Understanding regarding Rehire of Unvaccinated Firefighters, dated December 23, 2021, a true and correct copy of which is attached hereto as **Exhibit 6**.

46. Pursuant to that MOU, firefighters terminated for their inability to receive the COVID-19 vaccine could apply to reinstatement to their former positions (or comparable positions) for a period of two (2) years following their termination, in the event that they got fully vaccinated or that there was no longer any federal, state, or local requirement for employees to be fully vaccinated against COVID-19. *See id.*

47. Pursuant to that MOU, Plaintiffs Mr. Gustafson, Mr. Disch, Mr. Grondahl, Mr. Anderson, and Mr. Hall were reinstated to their former positions as Firefighters/EMT's, but have not been compensated for the damages suffered as a result of their prior termination and during

the period they were separated from their employment. Moreover, all Plaintiffs seek damages, declaratory, and injunctive relief.

48. Despite terminating the Plaintiffs and refusing to offer them reasonable accommodations, the City *did* extend accommodations beyond December 31 for one firefighter asserting a religious exemption to receiving the vaccine, a Mr. Jason Chappell, over the objections of Local 2545. No new MOU was bargained to carve out this especial benefit for Mr. Chappell, which was not offered to Plaintiffs or other members of Local 2545, and so a grievance and Unfair Labor Practice complaint was filed as a result of the City's direct dealing with Mr. Chappell. The City created a new position for Mr. Chappell, in violation of the relevant Collective Bargaining Agreement, despite claiming it could no longer offer similar accommodations to Plaintiffs.

49. At times, City representatives have made derogatory and demeaning statements regarding Plaintiffs and their beliefs, and promoted the idea that the unvaccinated could be harassed and treated as "second-class citizens" in the workplace.

50. For instance, Deputy Chief Day was removed from the negotiating process for accommodations between the City and Local 2545, due to his explicit personal bias against unvaccinated firefighters claiming religious exemptions, and for his embarking on a personal mission within the Department to ensure that no unvaccinated firefighters worked for, or were hired by, the City of Kirkland. The City acknowledged the Deputy Chief's bias and agreed to his removal.

51. The named Defendants have also made public statements heaping scorn on Plaintiffs and promoting the idea that they were irresponsible or reckless for choosing not to compromise their faith and subject themselves to an untested medical treatment.

52. Plaintiffs have suffered severe psychological, emotional, and mental distress at the hands of Defendants and as a result of their poor leadership, retaliation, hostility, and religious discrimination directed towards Plaintiffs, as well as the violations of Plaintiffs' constitutional liberties.

53. In addition to severe emotional trauma, Plaintiffs have suffered damages in the form of lost pay and benefits, from the dates of their respective terminations through the dates of their respective reinstatements, to the extent that Plaintiffs have been reinstated to their previous positions.

54. Plaintiffs have complied with Washington's claim presentment statute, RCW ch. 4.92, by properly filing tort claim forms with the City of Kirkland, more than sixty (60) days prior to this filing. As of this filing, the State has not undertaken to resolve any of Plaintiffs' claims, as set forth therein and as set forth here. All other conditions precedent to the filing of this action have either been satisfied or been waived by the Defendants.

## V.   JURY DEMAND.

55. Plaintiffs hereby demand a trial by jury, on all claims so triable as of right.

## VI.   CLAIM 1 – RELIGIOUS DISCRIMINATION IN VIOLATION OF WLAD.

56. Plaintiffs hereby incorporate and re-allege paragraphs 1 through 55 above, as if fully set forth herein.

57. This Claim 1 alleges a violation of the WLAD, against all Defendants, for Defendants' intentional discrimination against Plaintiffs on the basis of their religion.

58. As adherents of the Christian faith, Plaintiffs are members of a protected class.

59. The Defendants have individually and collectively treated Plaintiffs less favorably in the terms and conditions of their employment than similarly situated employee(s) who are not members of their protected class, including, but not limited to by: (i) offering them the "accommodation" of being moved to a remote location with unsuitable facilities for performing their work; (ii) refusing to consider any reasonable accommodations offered by Plaintiffs; (iii) determining that the "accommodation" initially offered by the City could not be maintained after December 31, 2021, with no basis in fact or law for such a determination; and (iv) terminating Plaintiffs' employment, after they maintained their beliefs and declined to receive the COVID-19 vaccine. The similarly situated employee(s) whom Defendants have treated more favorably than Plaintiffs do substantially the same work for the City of Kirkland.

60.  Plaintiffs have been treated less favorably than similarly situated employees as a direct result of religious discrimination against them, on the basis of their Christian faith.

61.  As a result of Defendants' religious discrimination and unlawful animus against Plaintiffs in violation of RCW 49.60.180 and RCW 49.60.030, Plaintiff is entitled to the remedies provided by RCW 49.60.030, as well as by other applicable law.

### VII. CLAIM 2 – HOSTILE WORK ENVIRONMENT IN VIOLATION OF WLAD.

62.  Plaintiffs hereby incorporate and re-allege paragraphs 1 through 61 above, as if fully set forth herein.

63.  This Claim 2 alleges a violation of the WLAD against all Defendants, for the Defendants' maintenance of a hostile work environment wherein Plaintiffs were ostracized and humiliated in front of their peers, due to their religion and the stigma of being identified as unvaccinated in the workplace.

64.  As adherents of the Christian faith, Plaintiffs are members of a protected class.

65.  Because of Plaintiffs' status as members of a protected class, they have suffered frequent and egregious harassment at the hands of Kirkland Fire Department employees, including those whose religious views (or lack thereof) did not prevent them from receiving the vaccine.

66.  This harassment, on the basis of their religion, was not invited or welcomed by Plaintiffs.

67.  The harassment directed to Plaintiffs was sufficiently pervasive and significant to alter the terms and conditions of their employment.

68.  The harassment directed to Plaintiffs is imputable to Defendants, as Plaintiffs' employers, because Defendants took no meaningful action to stop, prevent or remedy such harassment.

69.  Moreover, Defendants have engaged in affirmative conduct that had the effect of stoking tensions between employees at the Kirkland Fire Department, including, but not limited to segregating the Plaintiffs in a second-class, remote location away from their co-workers, and making statements deingtrating them to their co-workers and to the public.

70. Plaintiffs have suffered severe humiliation, emotional distress, and mental anguish as a result of the abusive work environment created by the City's unreasonable approach to the COVID-19 vaccine mandate and accommodating religious exemptions to that mandate, and which Defendants condoned by taking no action to remedy it.

71. Defendants knowingly permitted this abusive and hostile work environment to subsist by taking no meaningful corrective action to stop, prevent, or remedy it.

72. As a result of Defendants' maintenance of a hostile work environment against Plaintiffs, in violation of RCW 49.60.180 and RCW 49.60.030, Plaintiffs are entitled to the remedies provided by RCW 49.60.030, as well as by other applicable law.

## VIII. CLAIM 3 – RETALIATION IN VIOLATION OF WLAD.

73. Plaintiffs hereby incorporate and re-allege paragraphs 1 through 72 above, as if fully set forth herein.

74. This Claim 3 alleges a violation of the WLAD against all Defendants, for Defendants' intentional retaliation against Plaintiffs on the basis of their protected activities as set forth herein.

75. The Plaintiffs engaged in statutorily protected activity(ies) with respect to their employment, including, but not limited to when they: (i) requested religious exemptions to the COVID-19 vaccine mandate, on the basis of their sincerely held religious beliefs, in accordance with the allowance of such exemptions by state and federal law, and by the Governor's proclamations; (ii) requested reasonable accommodations for the religious exemptions that the Kirkland Fire Department had accepted; and (iii) exercised their rights with respect to leave under the FMLA.

76. Defendants were aware of each of the Plaintiffs' aforementioned, statutorily protected activities, from the time that Plaintiffs engaged in them.

77. Defendants have individually and collectively taken several adverse actions against Plaintiffs' employment, as a direct result of their engaging in the aforementioned statutorily protected activities, including, but not limited to: (i) offering them the "accommodation" of being

moved to a remote location with unsuitable facilities for performing their work; (ii) refusing to consider any reasonable accommodations offered by Plaintiffs; (iii) determining that the "accommodation" initially offered by the City could not be maintained after December 31, 2021, with no basis in fact or law for such a determination; and (iv) terminating Plaintiffs' employment, after they maintained their beliefs and declined to receive the COVID-19 vaccine.

78. Defendants' unlawful animus against Plaintiffs and their desire to retaliate against Plaintiffs for engaging in statutorily protected activities were, at the very least, "substantial factors" in taking the aforementioned, adverse actions against Plaintiffs' employment.

79. As a result of Defendants' retaliation against Plaintiffs in violation of RCW 49.60.210, Plaintiff is entitled to the remedies provided by RCW 49.60.030, as well as by other applicable law.

## IX. CLAIM 4 – WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

80. Plaintiffs hereby incorporate and re-allege paragraphs 1 through 79 above, as if fully set forth herein.

81. This Claim 4 alleges a claim under the common law of the State of Washington, for Defendants' wrongful termination of Plaintiffs in retaliation for their exercise of statutorily and constitutionally protected rights, including that of making known their Christian beliefs and objections to receiving the COVID-19 vaccine.

82. The ability of an employee in the State of Washington to freely exercise one's conscience, particularly with respect to one's religion and views concerning the sanctity of life and individuals' bodily integrity, is a matter that strikes at the heart of a citizen's social rights and duties.

83. Employees such as Plaintiffs have a legal right and/or privilege not to be fired for exercising legal rights and/or privileges protected by federal law and by the law of Washington.

84. Plaintiffs engaged in a statutorily and constitutionally protected activity, including, but not limited to when they engaged in the actions specifically identified in Claim 3, *supra*.

85. Defendants unlawfully took adverse actions against Plaintiff's employment, including, but not limited to when they took the discriminatory and retaliatory actions specifically identified in Claims 1-3, *supra*.

86. Defendants' having taken adverse employment actions against Plaintiffs was the direct result of their engaging in statutorily and constitutionally protected activities.

87. Defendants' wrongful termination of Plaintiffs, and other adverse employment actions taken against them, were intentional and knowing, or in the alternative, were recklessly indifferent to Plaintiffs' rights under applicable federal and state law.

### IX.   CLAIM 5 – VIOLATION OF FIRST AMENDMENT, FREE EXERCISE OF RELIGION, PURSUANT TO 42 U.S.C. SECTION 1983

88. Plaintiff hereby incorporates and re-alleges paragraphs 1 through 87 above, as if fully set forth herein.

89. This Claim 5 alleges a claim against all Defendants, for the Defendants' violation of Plaintiffs' rights to freely exercise their religion, as preserved by the First Amendment to the U.S. Constitution and by the Washington Constitution, and is brought pursuant to 42 U.S.C. § 1983.

90. The City's determination not to accommodate employees claiming religious exemptions is a governmental act that substantially burdens the Plaintiffs' practice of their religion.

91. The City's determination is neither neutral with respect to religion, nor generally applicable, and therefore strict scrutiny is the applicable standard.

92. There was no compelling governmental interest in foregoing recognized and accepted precautionary measures to prevent the spread of COVID-19, and instead, requiring the Plaintiffs to either accept the vaccination or forfeit their employment. There was further no compelling governmental interest in denying accommodations to those claiming religious exemptions, particularly in light of the Governor's recognition of religious exemptions and the City's accommodation of medical exemptions.

93. Moreover, the actions taken by the City with respect to Plaintiff's employment were not narrowly tailored to the goal of preventing the spread of COVID-19, nor were they the least restrictive means for accomplishing that goal.

94. Upon information and belief, the City has acted with unlawful animus against those of the Christian faith, in choosing to categorically deny them reasonable accommodations.

95. Alternatively to the foregoing allegations, the City's adverse actions taken with respect to Plaintiffs' employment were not rationally related to a legitimate government purpose.

96. The individual Defendants Chief Sanford, Deputy Chief Day, City Manager Lopez, and Mayor Sweet were all personally involved in the decision to deny reasonable accommodations to the Plaintiffs and in all other adverse actions with respect to their employment.

### X.     CLAIM 6 – VIOLATION OF FOURTEENTH AMENDMENT, DUE PROCESS CLAUSE, PURSUANT TO 42 U.S.C. SECTION 1983

97. Plaintiff hereby incorporates and re-alleges paragraphs 1 through 96 above, as if fully set forth herein.

98. This Claim 6 alleges a claim against all Defendants, for the Defendants' violation of Plaintiffs' rights to substantive and procedural due process, as preserved by the Fourteenth Amendment to the U.S. Constitution and by the Washington Constitution, and is brought pursuant to 42 U.S.C. § 1983.

99. The Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, as well as the Washington State Constitution, prohibit the Defendants from significantly interfering with the Plaintiff's fundamental constitutional rights, as well as their legitimate property interests.

100. The Plaintiffs enjoyed protectable property rights in their employment positions with the City, and the pay and benefits attendant to same, to which they were entitled by law.

101. Alternatively, Defendants placed unconstitutional conditions on the Plaintiff's receipt of government benefits, requiring them to forego their fundamental constitutional liberties in order to receive those benefits.

COMPLAINT FOR DAMAGES,
DECLARATORY RELIEF & INJUNCTIVE RELIEF
No. 25-CV-367

16

102. The Plaintiffs also enjoyed rights of bodily integrity and to be free from unwanted, unnecessary, and ineffective medical treatments to which they did not consent.

103. In requiring the Plaintiffs to either accept the vaccination or face termination and other adverse employment actions, the City imposed unconstitutional burdens on the Plaintiff's exercise of their property rights and rights to bodily autonomy, and deprived them of these rights.

104. The City denied adequate procedural protections to Plaintiffs, in determining to deprive them of their rights without offering reasonable accommodations or engaging in an interactive process with respect to the religious exemptions claimed by Plaintiffs.

105. There was no compelling governmental interest in foregoing recognized and accepted precautionary measures to prevent the spread of COVID-19, and instead, requiring the Plaintiffs to either accept the vaccination or forfeit their employment. There was further no compelling governmental interest in denying accommodations to those claiming religious exemptions, particularly in light of the Governor's recognition of religious exemptions and the City's accommodation of medical exemptions.

106. Moreover, the actions taken by the City with respect to Plaintiff's employment were not narrowly tailored to the goal of preventing the spread of COVID-19, nor were they the least restrictive means for accomplishing that goal.

107. Upon information and belief, the Defendants acted with unlawful animus against those of the Christian faith, in choosing to categorically deny them reasonable accommodations.

108. Alternatively to the foregoing allegations, the Defendants' adverse actions taken with respect to Plaintiffs' employment were not rationally related to a legitimate government purpose.

109. The individual Defendants Chief Sanford, Deputy Chief Day, City Manager Lopez and Mayor Sweet were all personally involved in the decision to deny reasonable accommodations to the Plaintiffs and in all other adverse actions with respect to their employment.

## XI.    CLAIM 7 – VIOLATION OF FOURTEENTH AMENDMENT, EQUAL PROTECTION CLAUSE, PURSUANT TO 42 U.S.C. SECTION 1983

110. Plaintiff hereby incorporates and re-alleges paragraphs 1 through 109 above, as if fully set forth herein.

111. This Claim 7 is a claim against all Defendants, for the Defendants' violation of Plaintiffs' rights to equal protection of the laws, as preseved by the Fourteenth Amendment to the U.S. Constitution, and by the Washington Constitution, and is brought pursuant to 42 U.S.C. §1983.

112. The Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, as well as the Washington State Constitution, prohibit the Defendants from treating similarly situated groups and speakers differently based on their exercise of conscience and of the religious liberty protected by the First Amendment.

113. Upon information and belief, Plaintiffs have been treated differently than other, similarly situated employees who did not exercise such First Amendment rights, such as those employees who sought medical exemptions and accommodations relating thereto.

114. There was no compelling governmental interest in treating Plaintiffs differently from similarly-situated employees, and instead, requiring the Plaintiffs to either accept the vaccination or forfeit their employment. There was further no compelling governmental interest in denying accommodations to those claiming religious exemptions, particularly in light of the Governor's recognition of religious exemptions and the City's accommodation of medical exemptions.

115. Moreover, the actions taken by the City with respect to Plaintiff's employment were not narrowly tailored to the goal of preventing the spread of COVID-19, nor were they the least restrictive means for accomplishing that goal.

116. Upon information and belief, the Defendants have acted with unlawful animus against those of the Christian faith, in choosing to categorically deny them reasonable accommodations.

COMPLAINT FOR DAMAGES,
DECLARATORY RELIEF & INJUNCTIVE RELIEF
No. 25-CV-367

18

117. Alternatively to the foregoing allegations, the Defendants' adverse actions taken with respect to Plaintiffs' employment were not rationally related to a legitimate government purpose.

118. The individual Defendants Chief Sanford, Deputy Chief Day, City Manager Lopez and Mayor Sweet were all personally involved in the decision to deny reasonable accommodations to the Plaintiffs and in all other adverse actions with respect to their employment.

## XII.    REQUEST FOR RELIEF.

**WHEREFORE**, the Plaintiffs, ERIK GUSTAFSON, JAMES ANDERSON, COREY HALL, MARIO MAGNOTTI, DAVID GRONDAHL, and JESSE DISCH, respectfully request that the Court enter judgment in their favor, and award the following relief:

A. General and compensatory damages for Plaintiffs' lost wages, lost benefits, emotional distress, humiliation, and anguish, against all Defendants, jointly and severally, in an amount to be determined at trial;

B. An award of punitive damages against all Defendants, jointly and severally, in an amount to be determined at trial;

C. Declaratory judgment, finding that Defendants' employment practices as alleged herein represent a violation of the United States Constitution, the Washington Constitution, the Washington Law Against Discrimination, and/or the public policy of the State of Washington, in the respects set forth above;

D. Permanent injunctive relief, enjoining Defendants from terminating or taking any other adverse employment action against employees whose religious exemptions to the COVID-19 vaccine or to other workplace requirements can be reasonably accommodated, and requiring Defendants to reasonably accommodate same;

B. Attorney's fees, costs, and expenses, pursuant to any applicable source of law; and

C. And such other and further relief as the Court may deem proper.

Respectfully submitted this 27th day of February, 2025.

**ROBERT A. BOUVATTE, PLLC**

By: /s/ Robert A. Bouvatte, Jr.
Robert A. Bouvatte, Jr., WSBA #50220
*Attorney for Plaintiffs*
P.O. Box 14185
Tumwater, WA 98511
PH: (564) 999-4005
bob@rbouvattepllc.com
rbouvattelaw@gmail.com

COMPLAINT FOR DAMAGES,
DECLARATORY RELIEF & INJUNCTIVE RELIEF
No. 25-CV-367

20